UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Cory Ray Garcia, | No. 24-cv-4106 (KMM/SGE) |
| Petitioner, | |
| v. | **ORDER** |
| B. Eischen, FPC Duluth, | |
| Respondent. | |

Petitioner Cory Ray Garcia filed this action seeking a writ of habeas corpus pursuant to 28 U.S.C. § 2241. Mr. Garcia claimed that under the First Step Act of 2018 (FSA) the Federal Bureau of Prisons (BOP) should have applied "earned time credits" to transfer him sooner from prison to a residential reentry center (RRC) or home confinement. On March 25, 2025, United States Magistrate Judge Shannon G. Elkins recommended that Mr. Garcia's petition be granted, noting that his transfer to an RRC was scheduled for April 8th. The BOP transferred Mr. Garcia to an RRC in Utah on April 3rd, and now Respondent moves to dismiss this case as moot. Resp't's Mot. to Dismiss, Doc. 18. Because the Court finds there no longer exists a live case or controversy and no exception to mootness applies, Respondent's motion is granted, and this action is dismissed without prejudice for lack of jurisdiction.

## BACKGROUND

Mr. Garcia is serving a 120-month sentence that was imposed on August 18, 2020. His statutory release date is December 27, 2026, taking into account the reduction to his

term of imprisonment for good conduct time. However, Mr. Garcia earned hundreds of days' worth of FSA time credits through his participation in evidence-based recidivism reduction programming and activities. *See* 18 U.S.C. § 3632(d)(4). The BOP applied 365 days of FSA time credits to his sentence toward early release. This moved Mr. Garcia's projected release date up to December 27, 2025. But Mr. Garcia had another 325 days of FSA time credits to be applied toward placement in an RRC or on home confinement. 18 U.S.C. § 3632(d)(4)(C). In August 2024, his Unit Team at the Federal Prison Camp in Duluth recommended he be placed in an RRC on September 25, 2024. However, due to a lack of available bed space, the BOP approved him for an RRC placement on April 8, 2025.

Mr. Garcia filed his habeas petition on November 4, 2024, claiming that the projected April 8th RRC placement violated the FSA because it deprived him of 62 days of time credits he earned, and the FSA mandates that the BOP apply his earned credits towards prerelease placement. On March 25, 2025, Judge Elkins issued a report and recommendation (R&R) concluding that Mr. Garcia's petition should be granted. Because only fourteen days remained until Mr. Garcia was scheduled to be transferred, Judge Elkins shortened the time for the parties to file objections to the R&R and responses to objections.

On March 27, 2025, Respondent filed a motion for an extension of time to file objections to the R&R, stating that a space at an RRC would become available on April 3rd, and arguing that the case would become moot upon Mr. Garcia's transfer. Respondent suggested that the parties should address whether the April 3rd transfer

would render this action moot before further consideration of the merits of the R&R. The Court granted Respondent's request and set a briefing schedule regarding the mootness issue. As Respondent anticipated, the BOP transferred Mr. Garcia to an RRC in Utah on April 3rd.

## DISCUSSION

Respondent argues that Mr. Garcia's April 3rd transfer from FPC Duluth to the Utah RRC means that the Court can no longer grant effective relief, making this action moot. Mr. Garcia argues that this action falls within an exception to the mootness doctrine, and therefore dismissal is not appropriate.

**I.     Legal Standard**

Under Article III of the Constitution, federal courts have jurisdiction over "ongoing cases or controversies." *Lewis v. Cont'l Bank Corp.*, 494 U.S. 472, 477 (1990). "This case-or-controversy requirement subsists through all stages of federal judicial proceedings. . . ." *Id.* If circumstances change during the course of litigation that would prevent a court from granting effective relief, this case-or-controversy requirement is no longer satisfied and the case becomes moot. *Church of Scientology of Cal. v. United States*, 506 U.S. 9, 12 (1992). In a habeas action, the release of the petitioner ordinarily means that the court can no longer provide effective relief and should dismiss the case without prejudice for lack of subject-matter jurisdiction. *See Ali v. Cangemi*, 419 F.3d 722, 724 (8th Cir. 2005) (explaining that the petitioner, who had been in immigration detention pending removal proceedings, "arguably received the relief he requested" when he was released on supervision).

There are, however, several recognized exceptions to the mootness doctrine.[1] *See Iowa Protection and Advocacy Servs. v. Tanager, Inc.*, 427 F.3d 541, 543–44 (8th Cir. 2005). Only one such exception is relevant here: when "the defendant attempts to avoid . . . review by voluntarily ceasing allegedly illegal conduct," but remains "free to reinitiate the challenged conduct once the mooted case is dismissed." *Id.* at 543 (citing *Deakins v. Monaghan*, 484 U.S. 193, 200 n.4 (1988)). Without this exception, "a defendant could engage in unlawful conduct, stop when sued to have the case declared moot, then pick up where he left off, repeating this cycle until he achieves all his unlawful ends." *Already LLC v. Nike, Inc.*, 568 U.S. 85, 91 (2013). The party asserting that a case has been rendered moot has a "formidable burden" to show that the complained of conduct cannot reasonably be expected to recur. *Fed. Bur. of Investigation v. Fikre*, 601 U.S. 234, 241–42 (2024).

## II. Analysis

### A. Mootness

The Court finds that the petition here is moot because it can no longer grant effective review. Mr. Garcia has received the relief he requested in his habeas petition—that he be transferred from a federal prison to an RRC or home confinement. When the

---

[1] Although he invokes the voluntary-cessation exception, Mr. Garcia does not contend that any of the other three traditional exceptions to mootness are applicable here. These other exceptions address circumstances where a case is capable of repetition, but evading review, *Tanager, Inc.*, 427 F.3d at 544; when "secondary or 'collateral' injuries survive after resolution of the primary injury"; and where the case "is a properly certified class action suit," *Sayonkon v. Beniecke,* No. 12-cv-27 (MJD/JJK), 2012 WL 1621149, at *2 (D. Minn. Apr. 17, 2012) (quoting *Riley v. I.N.S.*, 310 F.3d 1253, 1256 (10th Cir. 2002)), *report and recommendation adopted,* No. 12-cv-27 (MJD/JJK), 2012 WL 1622545 (D. Minn. May 9, 2012).

4

BOP transferred him to the RRC in Utah on April 3, 2025, he could no longer receive relief from the Court, and therefore, his petition became moot. *Miller v. Whitehead*, 527 F.3d 752, 756 (8th Cir. 2008); *Hernandez v. Eischen*, No. 24-cv-27 (KMM/DLM), 2024 WL 4839827, at *4 (D. Minn. Oct. 28, 2024) ("Mr. Hernandez was transferred to an RRC not long after he filed his petition, rendering his claim moot."), *report and recommendation adopted,* No. 24-cv-27 (KMM/DLM), 2024 WL 4839158 (D. Minn. Nov. 20, 2024); *Morrow v. Eischen*, No. 23-CV-2137 (JMB/DTS), 2024 WL 1939196, at *1 (D. Minn. Apr. 8, 2024) ("Because Morrow has been transferred to an RRC, there is no longer a live controversy, and the Court recommends the petition be denied as moot."), *report and recommendation adopted,* No. 23-CV-2137 (JMB/DTS), 2024 WL 1932537 (D. Minn. May 1, 2024).

Mr. Garcia contends that his transfer to an RRC does not, in fact, eliminate the existence of a live case or controversy. Relying on *Super Tire Engineering Co. v. McCorkle*, 416 U.S. 115 (1974), he first argues that he "possesses a concrete and ongoing interest in this case" because "a federal court decision could substantially affect his likelihood of later being moved to a secure facility by the BOP." Pet'r's Resp. 4–5. In *Super Tire Engineering Co.* the Supreme Court found that a lawsuit challenging a New Jersey policy that made striking employees eligible to receive unemployment payments did not become moot when the strike ended because the policy presented a "continuing and brooding presence [that] casts what may well be a substantial adverse effect on the interests of the petitioning parties." *Id.* at 123. However, taken to its logical conclusion, applying *Super Tire Engineering Co.* in this manner would allow the federal courts to

5

pass on all manner of disputes about the meaning of the law even when the plaintiff has no existing stake in the outcome of legal question presented. *See id.* (explaining that the adverse effect of any ongoing policy must not be "so remote and speculative that there [is] no tangible prejudice to the *existing interests* of the parties") (emphasis added). Indeed, to rely on the exception recognized in *Super Tire Engineering Co.*, the ongoing policy must, "cast a substantial adverse effect on the interests of the *petitioning parties*." *Milwaukee Police Ass'n v. Bd. of Fire & Police Comm'rs of City of Milwaukee*, 708 F.3d 921, 933–34 (7th Cir. 2013) (quoting *Super Tire Eng'g Co.*, 416 U.S. at 122) (emphasis added) (cleaned up). The only petitioning party here is Mr. Garcia, and the BOP's interpretation does not affect his existing interests. Mr. Garcia received the transfer he claimed the BOP unlawfully refused him. For the Court to resolve the issue of statutory interpretation presented by his petition would be to offer an opinion on "'an abstract dispute about the law' not linked to the rights of a particular plaintiff." *Id.* (quoting *Alvarez v. Smith*, 588 U.S. 87, 93 (2009)). And the Court's experience indicates that the risk Mr. Garcia is returned to prison due to the bed-space issues that gave rise to his habeas petition is speculative and remote.

      Similarly, Mr. Garcia's efforts to distinguish *Miller v. Whitehead* to show that this case has not become moot are unavailing. He suggests that unlike the petitioners in *Miller* who were transferred to a halfway house, "he remains at risk of being removed from the RRC due to the BOP's erroneous interpretation of the [First Step Act]." Pet'r's Resp. 5–

6

6.[2] In focusing on the contingent risk of a transfer from the RRC back to prison, Mr. Garcia identifies only the possibility of a future injury, not the existence of a present dispute about his legal rights that the Court can resolve through a favorable decision. Instead, to address the merits of the issues raised in the petition at this stage would be to give an advisory opinion. *See Zongo v. Garland*, No. 21-cv-676 (PAM/HB), 2021 WL 6427700, at *3 (D. Minn. Dec. 16, 2021) (finding habeas petition was moot where immigration detainee was released under an order of supervision where there was no indication the respondents "plan[ned] to take [him] back into custody or that his release was in error"), *R&R adopted by,* 2022 WL 119017 (D. Minn Jan. 12, 2022).

Second, Mr. Garcia argues that the Court should reach the merits of the statutory interpretation issue at the heart of this case because the primary relief he sought in his petition was transfer to home confinement, which he has not yet received. Pet'r's Resp. 5. However, this argument provides only the illusion of an ongoing controversy. In fact, throughout the litigation, Mr. Garcia has argued that the FSA requires his transfer to

---

[2] Mr. Garcia suggests his case is different from *Miller* by pointing out that there was a change in policy between the time that the *Miller* petitioners filed their case and when their claims were dismissed on appeal as moot. The BOP has not comparably changed its interpretation of the First Step Act here, so he contends that interpretation continues to hang over his prerelease custody placement as a present threat that he could be returned to a secure facility at any moment. It is true that sometimes an intervening change in a policy or regulation can make it unlikely, if not impossible, that a defendant will resume unlawful conduct. *E.g.*, *Greenman v. Jessen*, 787 F.3d 882, 891–92 (8th Cir. 2015) (finding the plaintiff's claims for declaratory and injunctive relief were moot because the Minnesota Court of Appeals had concluded that "operating a Segway while intoxicated does not violate Minnesota's DWI statute"). But for a plaintiff's challenge to a policy to survive in "the absence of a discrete application of the policy," the policy must "*manage*[] *to work a present injury on the plaintiffs.*" *Atlas Brew Works, LLC v. Barr*, 391 F. Supp. 3d 6, 14 (D.D.C. 2019) (citing *Super Tire Eng'g Co.*, 416 U.S. at 125–26). Here, there is no present injury to Mr. Garcia from the BOP's allegedly unlawful interpretation of the FSA.

7

"prerelease custody at a Residential Reentry Center . . . or home confinement." Pet'r's Reply in Supp. of Pet. 1, Doc. 12. Mr. Garcia focused on home confinement in his petition, not because he claimed the FSA specifically requires the BOP to transfer him to that form of prerelease custody, but because the BOP informed him that there was insufficient bed space at the chosen halfway house on the timeline he preferred. *See* Pet. 3 (discussing issue of bed space and citing *Woodley v. Warden, USP Leavenworth*, No. 24-cv-3053-JWL, 2024 WL 2260904, at \*4 (D. Kan. May 15, 2024) regarding the BOP's retention of discretion to decide whether to transfer to an RRC or home confinement), Doc. 1. Through his alternative request regarding a transfer to home confinement, Mr. Garcia cannot manufacture the continued existence of a live case or controversy.

For these reasons, the Court finds that the case is moot and turns to Mr. Garcia's alternative argument that the voluntary-cessation exception to mootness applies.

### B. Voluntary Cessation

Mr. Garcia next argues that the BOP has not met its significant burden to overcome the voluntary-cessation exception to mootness because he could still be transferred back to prison before he reaches his final release date.[3] Mr. Garcia specifically contends that the declaration provided by the BOP in support of its motion to dismiss is deficient because (1) it comes from a lower-level BOP official who cannot

---

[3] To some extent, Mr. Garcia's arguments and the Court's analysis regarding the mootness doctrine and the voluntary-cessation exception overlap. The Court won't restate its relevant reasoning in full a second time.

8

reasonably provide assurances that the government will not return Mr. Garcia to prison; and (2) substantively, it fails to foreclose all the possible ways that the BOP may return him to a secure facility. *See* Pet'r's Resp. 7–12. The Court finds that Respondent has met its burden in this case to show that the complained of conduct is unlikely to recur.

With respect to Mr. Garcia's criticisms of the declaration, the Court is not persuaded that the position of the BOP official who provided a declaration in support of its motion to dismiss detracts from Respondent's ability to carry its burden on this issue. The official made the declaration under penalty of perjury and Mr. Garcia points to nothing in the record that contradicts the official's account of the BOP's future intention with respect to Mr. Garcia's placement. In addition, the Court disagrees with Mr. Garcia that the declaration fails to demonstrate there is no reasonable likelihood that the complained of conduct will recur. The declaration states:

> 6. Now that Garcia has transferred to an RRC, there is no reasonable likelihood that he will return to a secure facility absent a change in Garcia's circumstances (such as a rule violation or a refusal to follow treatment recommendations). Garcia's Unit Team will not simply "re-review" him for RRC placement or home confinement and decide to recommend his return to a secure facility. And the BOP will not simply "re-designate" Garcia's place of confinement back to a secure facility.
>
> 7. Prior to his transfer to the RRC, Garcia signed a document entitled, "Community Based Program Agreement." . . . As part of this agreement, he acknowledged the circumstances under which he could be returned to a secure facility, including for necessary medical care, failure to undergo clinical assessments and abide by treatment recommendations, and failure to

9

> follow the rules and regulations of the RRC or home confinement (if approved).

Second Winger Decl. ¶¶ 6–7, Doc. 20. In addition, the record reflects that, although his transfer to the RRC ultimately took place on April 3, 2025, for many months before that transfer took place, his placement in a halfway house was scheduled for April 8th. First Winger Decl. ¶¶ 21–24, Doc. 10.

These uncontroverted facts show that Mr. Garcia's release was not the product of some attempt by the BOP to manipulate the Court's jurisdiction, but the result of the BOP's existing—albeit disputed—interpretation of the First Step Act. The voluntary-cessation exception exists to prevent a defendant from engaging in "strategies" whereby challenged conduct is suspended after being sued and then renewed after the defendant has won a dismissal. *Fed. Bureau of Investigation v. Fikre*, 601 U.S. 234, 241 (2024) ("A live case or controversy cannot be so easily disguised, and a federal court's constitutional authority cannot be so readily manipulated."). There is simply no indication in the record that the government's course of conduct in this case is part of a strategy to lure the Court into an improper dismissal, only to throw Mr. Garcia back into prison.

Moreover, the facts adduced in the declaration indicate that Mr. Garcia is only likely to be returned to a secure facility in a limited number of circumstances that are unrelated to the BOP's interpretation of the FSA. Each of those circumstances represents a change from the current status quo that depends on Mr. Garcia's own conduct while in prerelease custody. This strongly signals that the BOP is unlikely to send Mr. Garcia back to prison post-dismissal based on its allegedly unlawful interpretation of the First Step

10

Act, 18 U.S.C. § 3632(d)(4)(C). The voluntary-cessation exception to mootness applies when the defendant fails to show that the practice the plaintiff complained of is unlikely to recur. *Fikre*, 601 U.S. at 241 (citing *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 91 (2013) and *Friends of the Earth, Inc. v. Laidlaw Environ. Servs. (TOC), Inc.*, 528 U.S. 167, 189 (2000)). Here, the challenged conduct is the BOP's decision to hold Mr. Garcia in a secure federal prison past the date that the FSA required his transfer to prerelease custody. *That conduct* has ceased, and even if Mr. Garcia's actions could result in a revocation of his transfer to prerelease custody, the conduct he challenged in his petition is unlikely to recur because the BOP's interpretation of § 3632(d)(4)(C) is no longer implicated. Accordingly, the Court finds that the voluntary-cessation exception to mootness does not apply in this case, the petition is moot, and this action must be dismissed for lack of jurisdiction.

## ORDER

For the reasons set forth above, **IT IS HEREBY ORDERED THAT:**

1. The Petition for Writ of Habeas Corpus under § 2241 (Doc. 1) is **DENIED**.

2. This action is deemed **MOOT**.

3. This matter is **DISMISSED WITHOUT PREJUDICE** for lack of subject matter jurisdiction.

**Let Judgment be entered accordingly.**

Date:                                          *s/Katherine Menendez*
                                               Katherine Menendez
                                               United States District Judge